UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **ROBERT BECKWITH, JR.,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 3:15-cv-00581-RDP |
| } | |
| **CALIBER HOME LOANS, INC., et al.,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This matter is before the court on the following motions: Defendants Household Finance Corporation of Alabama ("HFC") and HSBC Mortgage Services Inc.'s ("HMSI") Motion to Compel Arbitration (Doc. 9); and Defendants Caliber Home Loans, Inc. ("Caliber"), U.S. Bank, N.A., and U.S. Bank Trust, N.A., as trustee for LSF9 Master Participation Trust's ("U.S. Bank Trust") Motion to Join the Motion to Compel Arbitration (Doc. 13). The motions have been fully briefed (Docs. 15, 21, 22). For the reasons outlined below, and after careful consideration of the record and briefs, the court concludes that the Defendant's motions to compel arbitration (Docs. 9, 13) are due to be granted.

I.  **FACTS AND PROCEDURAL HISTORY**

On November 14, 2002, HFC and Robert Beckwith signed a Loan Repayment and Security Agreement ("Note"), in which HFC agreed to loan Beckwith $106,751.18. (Doc. 9-1, Ex. 1). The Note stated, "ALTERNATIVE DISPUTE RESOLUTION AND OTHER RIDERS. The terms of the Arbitration Agreement and any other Riders signed as part of this loan transaction are incorporated into this Agreement by reference." (*Id*. at 3). HFC and Beckwith

also signed a mortgage contract securing the loan with property located at 775 Ebony Road, Tuscumbia, Alabama 35674, where Beckwith resided. (*Id*. at 4-7[1]; *see* Doc. 13-1, Ex. A; Doc. 1-2 at 3, ¶ 6).  The mortgage contract stated, "The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower . . ." (Doc. 9-1, Ex. 1 at 6, ¶ 11).  It also stated, "Arbitration Rider to Note.  The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Mortgage." (*Id*. at 7, ¶ 20).

> HFC and Beckwith signed the arbitration agreement, which stated,
>
> This Arbitration Rider is signed as part of your Agreement with Lender and is made a part of that Agreement.  By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration . . .

(Doc. 9-1, Ex. 2 at 1).  The Note indicated that "Lender" and "us" referred to HFC. (Doc. 9-1, Ex. 1 at 1).  The servicer of the loan was HMSI. (*See* Doc. 1-2, at ¶ 7).  On October 1, 2014, LSF9 Master Participation Trust, which is represented here by U.S. Bank Trust, purchased the loan and Caliber became the new servicer of the loan. (Doc. 13-1, Ex. A).

On March 3, 2015, Beckwith filed suit in the Circuit Court of Colbert County Alabama against HFC, HMSI, Caliber, U.S. Bank, N.A., and U.S. Bank Trust. (Doc. 1-2).  He alleges that he filed Chapter 13 bankruptcy in September 2008. (*Id*. at 3, ¶ 8).  The Bankruptcy Court discharged his bankruptcy on February 11, 2014, after he had made all of the payments due under the confirmed Chapter 13 plan, including payments due to Defendants. (*Id*. ¶ 10).  On

---

[1] Page numbers do not appear on the mortgage contract.  Citations refer to the location of the page within Exhibit 1.

March 29, 2014, Defendants sent him a notice of default on the mortgage payments. (*Id*. ¶ 11). He alleges that he sent monthly payments to Defendants from March 2014 to January 2015. (*Id*. at 3-4, ¶¶ 11-13). Beckwith also claims that Defendants sent some of the payments back, accepted some (but did not cash them), and cashed some (but did not apply all of the cashed payments to his account). (*Id*. at 4, ¶¶ 13-14).

Beckwith further alleges that Defendants improperly instituted foreclosure proceedings on the property on October 1, 2014. (*Id*. ¶ 15). He contends that from September 2014 to February 2015, Defendants published in the newspaper false information in a notice of the foreclosure. (*Id*. at 4-5, ¶ 18). They also reported to national credit bureaus false information regarding his default. (*Id*.). He further alleges that "the attempted sale was wrongful, illegal, in violation of law and the documents governing the relationship between Beckwith and the owners of the note and mortgage[,] . . . that he was not behind in his payments on the mortgage[,] and that he was improperly defaulted[,] and that the note was improperly accelerated." (*Id*. at 5, ¶ 20).

Based on these factual allegations, Plaintiff asserts fourteen claims against Defendants. (*See id*. at 5-20). He claims that Defendants negligently serviced the loan, attempted to collect sums not due, improperly declared him to be in default on the loan, unlawfully attempted foreclosure proceedings, and disseminated false information regarding his default (Count One); acted with reckless indifference in doing the same (Count Two); were unjustly enriched through the attempted foreclosure (Count Three); wrongfully initiated foreclosure proceedings (Count Four); slandered the title to the property through the attempted foreclosure (Count Five); breached the terms of the mortgage contract (Count Six); misrepresented that he was in default and disseminated inaccurate information regarding his credit history (Count Seven); "in

association with the servicing of the loan account," held him in a false light regarding his default (Count Eight); engaged in defamation, libel, and slander by publishing that he was in default and that the property would be foreclosed on (Count Nine); violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, by failing to make the required disclosures when entering into the mortgage contract and by charging fees not authorized by the mortgage contract (Count Ten); violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2602 *et seq.*, by failing to provide him with information regarding his loan payments and default (Count Eleven); violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, by inaccurately reporting that he was in default (Count Twelve); and violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, by demanding that he pay amounts not due under the mortgage contract (Count Thirteen). (*Id.*). Finally, he sought, based on Defendants' breach of the mortgage contract, an order declaring that he was not in default and that Defendants should not have (and cannot) institute foreclosure proceedings (Count Fourteen). (*Id.* at 20).

HFC and HMSI have moved the court to compel arbitration of the claims against them and to dismiss them from the case. (Doc. 9). Caliber, U.S. Bank, N.A., and U.S. Bank Trust have sought to join in the motion to compel. (Doc. 13). Beckwith has responded, presenting several arguments in opposition to the motions. (Doc. 15). The court addresses each of these matters below.

## II.   DISCUSSION

### A.   Retroactive Application of 15 U.S.C. § 1639c(e)

Beckwith argues that 15 U.S.C. § 1639c(e)(1) and (e)(3) (statutory provisions which are included in TILA), as amended by the Dodd-Frank Wall Street Reform and Consumer Protection

Act ("Dodd-Frank Act" or "the Act"), which was enacted on July 21, 2010, prevents enforcement of the arbitration agreement. (Doc. 15 at 2-7). *See* Dodd-Frank Act, Pub. L. 111-203, § 1414(a), 124 Stat. 1376, 2149 (2010). The mortgage contract was signed prior to the enactment of the Dodd-Frank Act; however, Beckwith argues that the Act should be applied retroactively to prevent enforcement of the arbitration agreement.

>Section 1639c(e) states:
>
>(1) In general
>
>No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration . . . as the method for resolving any controversy or settling any claims arising out of the transaction.
>
>. . .
>
>(3) No waiver of statutory cause of action
>
>No provision of any residential mortgage loan or of any extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer, and no other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit referred to in paragraph (1), shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction, pursuant to section 1640 of this title or any other provision of law, for damages or other relief in connection with any alleged violation of this section, any other provision of this subchapter, or any other Federal law.

15 U.S.C. § 1639c(e)(1), (e)(3) (2010). The Eleventh Circuit has not addressed the retroactive application of this provision of the Dodd-Frank Act.

To determine whether a statute should be applied retroactively, the court first considers whether Congress expressly prescribed the statute's reach. *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006). If Congress did not make such prescription, then the court considers "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct

arising before its enactment." *Id.* (internal quotations and alterations omitted). As to this second inquiry, there is a presumption against retroactive application of a statute that would affect the contractual rights of the parties. *See Landgraf v. USI Film Products*, 511 U.S. 244, 271 (1994) ("The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance."). Arbitration agreements create contractual rights and are to be enforced according to their terms. *See AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745-46 (2011) (stating that the Federal Arbitration Act reflects the "fundamental principal that arbitration is a matter of contract" (internal quotation omitted)).

Congress did not specifically speak to the retroactive application of § 1639c(e)(1) and (e)(2). Thus, the court must determine whether such an application would have a disfavored effect on the substantive rights of the parties. *See Fernandez-Vargas*, 548 U.S. at 37. Consistent with the other courts that have considered this matter, this court concludes that these provisions of the Dodd-Frank Act should not be given retroactive effect so as to prohibit the enforcement of an arbitration agreement entered into before their enactment.[2] *See Richards v. Gibson*, No. 1:15-cv-7-LG-RHW, slip op. at 3 (S.D. Miss. Mar. 4, 2015); *Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1079 (D. Colo. 2013); *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 752 S.E.2d 372, 386 (W. Va. 2013).

Contrary to Beckwith's assertion, the Dodd-Frank Act does not merely confer or oust jurisdiction. It affects the parties' substantive contractual right to arbitrate the claims against

---

[2] Defendants address whether the provisions of the Dodd-Frank Act in question here became effective on the date of enactment in 2010, or the date the implementing regulations became effective in 2013. (Doc. 21 at 2-3). The court does not need to address this issue, as the distinction does not affect the question of whether the Act is applicable to a mortgage contract signed in 2002.

them, a right that Congress has recognized as "irrevocable." *See* 9 U.S.C. § 2; *AT&T Mobility LLC*, 131 S.Ct at 1745-46. Vested contractual rights should not be withdrawn through retroactive application of a statute absent clear congressional intent to do so, as predictability and stability are the backbone of contractual relationships. *See Landgraf*, 511 U.S. at 271. Thus, the Dodd-Frank Act does not apply retroactively here (and therefore does not operate to render unenforceable the arbitration agreement in this case).

### B.     Enforcement of Arbitration Agreement by Nonsignatories

HMSI, Caliber, U.S. Bank, N.A., and U.S. Bank Trust also move the court to compel Beckwith to arbitrate his claims against them. (Doc. 9 at 18-23; Doc. 13). These defendants acknowledge that they are not signatories to the mortgage contract and arbitration agreement; rather, they rely on the doctrine of equitable estoppel. U.S. Bank Trust has a winning argument. The others do not.

Whether a nonsignatory to an arbitration agreement may enforce the agreement against a signatory is a question of state law. *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170-71 (11th Cir. 2011). Under Alabama's doctrine of equitable estoppel, a nonsignatory may enforce an arbitration provision against a signatory where the claims asserted against the nonsignatory are "intimately founded in and intertwined with the underlying contract obligations." *Jenkins v. Atelier Homes, Inc.*, 62 So. 3d 504, 510 (Ala. 2010) (internal quotations omitted). However, equitable estoppel under these circumstances is only available to nonsignatories who have standing to enforce the arbitration agreement. *Id*. at 510-11. Thus, the court must, as an initial matter, determine whether the language of the agreement evinces an intent to permit a nonsignatory to enforce the agreement. *Id*. at 511. If the language refers specifically to the

signatories and does not contemplate the nonsignatory, the nonsignatory may not compel arbitration of the claims against it.  *Id*.

Here, the arbitration agreement states, "This Arbitration Rider is signed as part of your Agreement with Lender and is made a part of that Agreement.  By signing this Arbitration Rider, you agree that *either Lender or you* may request that any claim . . . arising from or relating to this Agreement or the relationships which result from this Agreement . . . shall be resolved, *upon the election of you or us*, by binding arbitration . . . ."  (Doc. 9-1, Ex. 2 at 1 (emphasis added)).  The mortgage contract indicates that "Lender" and "us" refer to HFC.  (Doc. 9-1, Ex. 1 at 1).  The mortgage contract further states, "The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower . . . The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Mortgage."  (*Id*. at 11-12, ¶¶ 11, 20).

HFC sold its rights under the mortgage contract to U.S. Bank Trust.  (Doc. 13-1, Ex. A).  The language of the arbitration agreement specifically refers to HFC and Beckwith as having the right to elect arbitration.  However, the arbitration agreement is a part of the mortgage contract, which extends all terms of the agreement to both benefit and bind U.S. Bank Trust as the purchaser of HFC's interest.  (*See* Doc. 9-1, Ex. 1 at 6, ¶ 11).  Because the language is sufficiently broad to contemplate that U.S. Bank Trust would retain HFC's rights under the mortgage contract, including the arbitration agreement, U.S. Bank Trust has standing to compel arbitration of the claims against it.

Furthermore, Beckwith's claims against U.S. Bank Trust are "intimately founded in and intertwined with" its obligations under the mortgage contract and fall within the scope of claims covered by the arbitration agreement.  *See Jenkins*, 62 So. 3d at 510.  The arbitration agreement

8

covers "any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future) . . . arising from or relating to this Agreement or the relationships which result from this Agreement . . ." (Doc. 9-1, Ex. 2 at 1). Beckwith asserts fourteen claims under federal and state law against all defendants without specifying which defendants took what actions. (*See* Doc. 1-2). The factual allegations underlying all of his claims arise from, relate to, and are based on the mortgage contract or the lender/borrower relationship that arose from it.

Count Six specifically alleges that the defendants breached the mortgage contract. (*Id*. at 8-10). Count Ten asserts violations of TILA based on the defendants' relationship with Beckwith under the contract and their obligations when entering into the contract. (*Id*. at 14-16). Count Eleven alleges that the defendants violated RESPA by failing to provide Beckwith with requested information regarding his payments on the contract and his alleged default. (*Id*. at 16-17). Count Twelve claims that the defendants inaccurately reported that Beckwith was in default on his payments under the contract, in violation of the FCRA. (*Id*. at 17-19). Count Thirteen asserts that the defendants violated the FDCPA by attempting to collect amounts not owed under the mortgage contract. (*Id*. at 21). Count Fourteen asks for declaratory judgment regarding the defendants' alleged breach. (*Id*. at 22). The remaining counts are based on allegations regarding the defendants' servicing of the loan, application of Beckwith's payments to the loan, institution of foreclosure proceedings, and reporting of his default in the newspaper and to credit bureaus. The mortgage contract created the relationship between U.S. Bank Trust and Beckwith from which these claims arise and provides for (and defines) the duties of U.S. Bank Trust as to the allegations underlying the claims against it.

HMSI and Caliber lack standing to compel arbitration because the language of the arbitration agreement specifically refers to HFC and Beckwith and no other portion of the mortgage contract contemplates that these Defendants, as servicers of the loan, could compel arbitration. *See Jenkins*, 62 So.3d at 510-11. The pleadings do not make clear the relationship U.S. Bank, N.A. has to the other parties in this case. Based on the record currently before the court, U.S. Bank, N.A. also lacks standing to compel arbitration. Therefore, HMSI, Caliber, and U.S. Bank, N.A.'s motions seeking to compel arbitration are due to be denied.

###### C. Other Arguments Presented by Plaintiff

Beckwith asserts that the arbitration agreement is unconscionable and unenforceable. (Doc. 15 at 9-13). However, he presents no evidence (and makes no substantial allegations) to support his assertion. The court finds that the agreement to arbitrate is enforceable.

Beckwith also asserts, without providing any relevant facts or citing any case law, that his claims fall outside of the scope of claims covered by the arbitration agreement. (*Id*. at 13-14). That argument misses the mark. The arbitration agreement covers "any claim . . . arising from or relating to this Agreement or the relationships which result from this Agreement . . ." (Doc. 9-1, Ex. 2 at 1). As discussed above, all of Beckwith's fourteen claims, which are asserted against every defendant, arise from or relate to the mortgage contract and the relationships resulting from it.

### III. CONCLUSION

For these reasons, the court finds that the arbitration agreement is enforceable under the Federal Arbitration Act. *See* 9 U.S.C. § 2 (making valid, irrevocable, and enforceable any written provision of a contract evidencing a transaction involving commerce to settle by arbitration claims arising out of the contract). Therefore, HFC's motion to compel arbitration

and to dismiss HFC is due to be granted. Further, as discussed above, U.S. Bank Trust's motion to compel arbitration is due to be granted. The motions filed by the other Defendants (HMSI, Caliber, and U.S. Bank, N.A.) are due to be denied.

The court will enter a separate order.

**DONE** and **ORDERED** this June 17, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE